# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :
    :
      -vs-           :      No. 4: 20-CR-065
    :
LORENZO SCOTT,         :      (JUDGE BRANN)
       Defendant     :
    :

## GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SPECIFIC DISCOVERY AND *BRADY* MATERIAL

AND NOW, comes the United States, by and through Assistant United States Attorney Robert J. O'Hara, and files this brief in opposition to the defendant's Motion for Specific Discovery and *Brady* Material. (Doc. 52).

## BACKGROUND

On March 3, 2020, a federal grand jury sitting in Scranton, Pennsylvania, returned an indictment (Doc. 1) charging Lorenzo Scott with the following offenses:

Count 1: Murder, in violation of 18 U.S.C. §§ 7(3) and 1111;

Count 2: Assault with Intent to Commit Murder, in violation of 18 U.S.C. §§ 7(3) and 113(a)(1); and

Count 3: Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 7(3) and 113(a)(6).

The charges were based on an incident that occurred on March 25, 2015, at the United States Penitentiary at Lewisburg, PA. Inmates Lorenzo Scott and Larry McCoullum were cellmates and the only occupants of cell 310 within "G-block" of the penitentiary. In summary, a correctional officer, conducting a routine check of the "G-block" unit, observed Scott striking, stomping and inflicting blunt force trauma to McCoullum's head, neck and torso, as McCoullum lay on the floor of their shared cell. Scott was later questioned about the incident and admitted that he intended to kill McCoullum. As a result of the incident, McCoullum was unresponsive and suffered injuries from which he never recovered. McCoullum lingered in a persistent vegetative state until he died in May 2017, approximately two years and two months after the incident. An autopsy examination determined the cause of death to be "complications of blunt force head trauma" that McCoullum suffered from the assault by Scott.

As a result of his indictment for the intentional, premeditated murder of Larry McCoullum, Lorenzo Scott's case is currently being evaluated by the Department of Justice under it's "death penalty

protocol"[1] in order to determine whether Scott should face the death penalty for his crime.  The protocol specifically provides:

> In any case in which the United States Attorney or Assistant Attorney General is contemplating requesting authorization to seek the death penalty or otherwise believes it would be useful to the decision-making process to receive a submission from defense counsel, the United States Attorney or Assistant Attorney General shall give counsel for the defendant *a reasonable opportunity* to present information for the consideration of the United States Attorney or Assistant Attorney General which may bear on the decision whether to seek the death penalty.

*See* Justice Manual, § 9-10.080 - Capital Crimes (emphasis added).

Pursuant to the protocol, a meeting with the Capital Review Committee in this case was scheduled for September 2020.  At the request of defense counsel, the meeting was continued.  Efforts to reschedule the meeting have been unsuccessful and, thus, the meeting has not yet taken place.  Defense counsel has indicated that they are not yet prepared to make the presentation set forth above in § 9-10.080.

As will be addressed herein, since the time of indictment, the government, fully cognizant of its discovery obligations, has provided defense counsel with approximately 3000 pages of discovery, as well as

---

[1] *See* Department of Justice, Justice Manual, § 9-10.000 - Capital Crimes.

additional items, such as photographs and videos from USP Lewisburg, concerning the incident at issue, the defendant and the victim.

Meanwhile, this Court has designated this case as "complex."[2] Since a decision has not yet been made as to whether the Department of Justice will seek the death penalty, this Court has not set a deadline for the filing of pretrial motions. No evidentiary hearing is scheduled. No trial date is yet in place.

Now, *over one year after the indictment* in this case – and *before* the defense presentation to the Capital Review Committee in this matter – and *before* the Justice Department has even made a decision as to whether to *even seek* the death penalty in this case – the defense has filed an extensive, wide-ranging and burdensome request for additional specific discovery in this matter.  Such requests are typically referred to in the caselaw as "pre-protocol" or "pre-authorization"[3] discovery requests.  The defense pre-authorization discovery request,

---

[2] *See* Order of August 11, 2020, designating the case as "Complex." (Doc. 27).

[3] *See e.g., United States v. Wilson*, 2021 WL 480853 *3 n. 2 (W.D. N.Y., February 10, 2021) ("Pre-authorization discovery" has been defined to include "discovery that will assist defendants in convincing the United States Attorney . . . and the Attorney General . . . not to authorize the Government to seek the death penalty against them." (*quoting United States v. Delatorre*, 438 F. Supp. 2d. 892, 899 (N.D. Ill. 2006).

however, does not seek information regarding the incident at issue, the

defendant, the victim or any witnesses.  Rather, the discovery request is

for extensive information regarding the *institution* where the defendant

and victim were housed.  More specifically, the defense discovery

motion requests the following information[4]:

> **a.**    All documents and communications referring or relating to incidents of inmate-on-inmate assaults between cellmates in the Special Management Unit at USP Lewisburg from March 2010 to present, including but not limited to, any logs and/or reports identifying a list of all inmates involved in inmate-on-inmate assaults, the extent of any injuries sustained and any medical services provided. (**It should be noted that the request is for eleven years' worth of documents and "communications"!**)

> **b.**    Copies of Form 583, Report of Incident, prepared by USP Lewisburg for the years 2005-15 for all inmate deaths at USP Lewisburg. (**The request is for information over a 10-year period.**)

> **c.**    Copies of the Board of Inquiry Report or Regional Inquiry Team (After Action Report) or Local Inquiry Team Report or any after action report and summary report conducted at USP Lewisburg due to this incident. Also, the local response should include the corrective action plan to the recommendations; all documents, records, video recordings, or working papers or personal records reviewed and created by members of the Boards or Teams, to include electronic material. (**Government counsel has been informed that such reports are unusual and rarely done.**)

---

[4] *See* Defense Motion, Doc. 51, p. 13-14.

d.      Copies of all Board of Inquiry Reports, Regional Inquiry Team Reports, Local Inquiry Team Reports and local responses and corrective action plans or recommendations for *all incidents at USP Lewisburg*. Also, all documents, records, working papers or personal records created by members of the Boards or Teams, to include electronic material. (emphasis added). **(The term "incident" is not defined or explained.)**

e.      The information required by the Inmate Discipline Program Statement 5270.09, regarding the Data Collection Requirements Codes 100 and 101 to include the following:

   i. Type of weapon
   ii. Type of victim
   iii. Nature of injury
   iv. Referral for prosecution **(There is no time period set forth in the request.)**

f.      The average daily population of the USP Lewisburg for the years 2005-2015. **(The request is for *daily* information over a 10-year period.)**

g.      Copies of all Institution Character Profiles reports conducted regarding USP Lewisburg from 2005 to 2015. **(Again, the request is for information over a 10-year period.)**

h.      Copies of all Prison Social Climate Surveys reports regarding USP Lewisburg, from 2005 to 2015. **(Again, the request is for information over a 10-year period.)**

In addition to the above, the defense also requests vast, wide-ranging and extensive information concerning two *on-going* civil lawsuits involving USP Lewisburg in the Middle District of

Pennsylvania, *Richardson v. Bledsoe*, docket number 3:11-CV-02266,

and *McCreary v. Federal Bureau of Prisons*, docket number 1:17-CV-

01011.

More specifically the defense requests the following information[5]:

a. All information the government produced to the plaintiffs in the *Richardson* and *McCreary* lawsuits, including but not limited to statements, studies, statistical compilations, policies, memoranda, writings of every kind, in response to a request for production of documents under the Federal Rules of Civil Procedure.

b. All answers made by the government to any interrogatory propounded by any of the plaintiffs in the *Richardson* and *McCreary* lawsuits.

c. All transcripts of any deposition taken by the government or the plaintiffs in the *Richardson* and *McCreary* lawsuits.

d. All documents and material obtained by the government from any of the plaintiffs in the *Richardson* and *McCreary* lawsuits whether obtained voluntarily or informally or following the government's, subpoena, request for production of documents or service of interrogatories upon any plaintiff in the *Richardson* and *McCreary* lawsuits.

e. to the extent the information contained in ¶ 32 (a)-(h) of this motion were not produced to the plaintiffs in Richardson and McCreary litigation, that the information be obtained by the government from BOP and delivered forth with to the defense.

---

[5] *See* Defense Motion, Doc. 51, p. 23-24.

The government submits that the defendant's request for such "pre-authorization" discovery should be denied.  The defendant's extensive request for a decade's worth of information and additional information related to ongoing civil litigation is overbroad, burdensome and, in the pre-authorization stage, is contrary to the overwhelming weight of caselaw.  Even in the few cases where pre-authorization discovery has been granted, the scope of such discovery has been limited – unlike the vast, voluminous and wide-ranging request made by Lorenzo Scott in the present matter.

Accordingly, the defendant's motion for additional specific discovery should be denied.

# ARGUMENT

## I.   The Government has Compiled, and Continues to Comply, with Its Discovery Obligations.

At the outset, it must be noted that, since the filing of the indictment against Lorenzo Scott in March 2020, the government has complied with its discovery obligations.   Fully cognizant of those discovery obligations, to date, the government has provided defense counsel with approximately 3000 pages of discovery, including: BOP reports concerning the incident; photos of the crime scene, photos of the defendant and photos of the victim; statements made by the defendant; inmate disciplinary data for the defendant and the victim; the previous Presentence Investigation Reports (PSRs) of the defendant and the victim, including their previous criminal history records, information concerning their physical, mental and emotional health, and previous employment histories; reports concerning the FBI interview of the defendant; the Medical Examiner's Report; the Autopsy Examination Report; and reports of scientific testing.  The government also provided the defense with the complete BOP Central File ("C-file") of the defendant (numbering approximately 1504 pages) and the C-file of the

victim (numbering approximately 2655 pages), containing their complete histories while in BOP custody.

In addition, the government has gone beyond its discovery obligations by providing to the defense *early disclosure* of the statements of various BOP witnesses concerning the homicide incident, which would ordinarily be protected from such disclosure by the *Jencks Act.* (*See e.g., United States v. Pray,* 764 F. Supp. 2d 184, at *188 (D.D.C. 2011) (Even in cases where pre-authorization discovery was ordered, government not required to produce the identification of prosecution witnesses or *Brady* material related to witnesses).

Thus, the government has provided to the defense virtually all information currently in its possession concerning the homicide incident at issue, the defendant, the victim, and the witnesses to the incident.

## II.   The Justice Manual Does Not Create a Right to "Pre-Authorization" Discovery for the Defendant.

The Justice Manual reads as follows:

The Justice Manual provides internal Department of Justice guidance.  It is not intended to, *does not*, and may not be relied upon to *create any rights, substantive or procedural*, enforceable at law by any party in any matter civil or

10

> criminal.  Nor are any limitations hereby placed on
> otherwise lawful litigation prerogatives
> of the Department of Justice.

*See* Department of Justice, Justice Manual, § 1-1.200 – Authority (emphasis added).

In support of his request for extensive pre-authorization discovery that he claims will assist with the presentation of mitigation evidence to the DOJ Capital Review Committee, the defendant relies on *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  The protections afforded by *Brady,* however, are aimed at affording a defendant a fair *trial*. *United States v. Bagley*, 473 U.S. 667, 678 (1985).  ("suppression of evidence amounts to a constitutional violation only if it deprives a defendant of a fair trial").  *Brady* disclosure is thus a *trial* right. *United States v. Higgs,* 713 F.2d 39, 44 (3d Cir. 1983) (*Brady* material must be disclosed "in time for effective use at trial.") *See also, United States v. Pray,* 764 F. Supp.2d 184, 189 (D.D.C. 2011)(denying defendant's motion to compel pre-authorization discovery and finding that *Brady* disclosure is a *trial* right (*citing United States v. Ruiz*,  536 U.S. 622, 634 (2002) ("The principle supporting *Brady* was avoidance of an unfair trial to the accused.  That concern is *not* implicated at the plea stage . .

." (emphasis added))). *See also United States v. Tsarnaev,* 2013 WL 6196279, at *1 (D. Mass. 2013)[6] (denying defendant's request for pre-authorization discovery and concluding that *Brady* is a trial right, and thus the information "need only be disclosed 'in adequate time for the information to be used effectively by the defense at trial.'")(*citing United States v. Brassard*, 212 F.3d 54, 56 (1st Cir. 2000)).

The defendant thus attempts to link the government's *Brady* obligations to his upcoming, and as-of-yet-to-scheduled, meeting with the Capital Review Committee.  That meeting, however, conducted pursuant to the death penalty protocol set forth in the Justice Manual, *does not* create any substantive or procedural rights for a defendant.

As the court explained in *United States v. McVeigh*, 944 F. Supp. 1478 (D. Colo. 1996):

> . . . the decision to seek the death penalty under the Act is a matter of prosecutorial discretion.  The Protocol did not create any individual right or entitlement subject to the due process protections applicable to an adjudicative or quasi-adjudicative governmental action.  The Act expressly provides that the attorney for the government shall file and serve the death penalty notice if he believes that the "circumstances of the offense" are such that a sentence of death is justified.  18 U.S.C.] § 3593(a).  There is **no requirement** that the prosecutor consider **any other matters**,

---

[6] The *Tsarnaev* case is often referred to as the "Boston Marathon Bomber" case.

including *any mitigating factors* concerning the offense or the character and circumstances of a particular defendant. The decision of a jury whether to recommend a sentence of death is made only after a full hearing and consideration of aggravating and mitigating factors provided by information submitted pursuant to the adversary process. [*Id.*] § 3593 (b) – (e). The constitutional protections of the life and liberty of a defendant are provided by the sentencing hearing following trial of the charges in the indictment. The issuance of these notices is essentially a prosecutor's charging decision.

*Id.* at 1483-84 (emphasis added).

The Third Circuit has similarly held the Justice Manual does not create any substantive or procedural rights for a defendant. *See United States v. Wilson,* 413 F.3d 382, 389 (3d Cir. 2005) ("Department of Justice guidelines and policies do not create enforceable rights for criminal defendants."); *United States v. Gomez*, 237 F.3d 238, 241 n.1 (3d Cir. 2000) (stating that any argument that the Justice Manual creates rights "would be against the weight of judicial authority"); *United States v. Savage*, 2011 WL 6747479 *3 (E.D. Pa. 2011) ("A majority of courts, *including the Third Circuit*, has confirmed the guidelines contained in the [Justice Manual] do not create substantive or procedural rights for a defendant.") (emphasis added).

Other circuit courts have made the same determination. *See e.g. United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001) ("[T]he death

penalty protocol is unenforceable by individuals."); *In re U.S.* 197 F.3d 310, 315-316 (8th Cir. 1999) ("Courts that have addressed directly whether the death penalty protocol described in the Manual creates any substantive or procedural rights enforceable by a defendant have held almost uniformly that it does not." (collecting cases)); *United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009) ("Several sister circuits have held that the Department of Justice Guidelines and policies do not create enforceable rights for criminal defendants."); *United States v. Lopez-Matias*, 522 F.3d 150, 155-56 (1st Cir. 2008) (stating that the Manual that mandates the meeting with the Capital Case Review Committee is not a source of rights); *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) ("[I]t is clear that the [Justice Manual] does not create any substantive or procedural rights.").

Further, the vast majority of district courts have arrived at the same conclusion. *See United States v. Wilson,* 2021 WL 480853 *20 (W.D. N.Y., decided **February 10, 2021**) (holding that *Brady* and its progeny did not compel the government to provide defendant with pre-authorization discovery in advance of defense counsel's meeting with Capital Review Committee); *United States v. Hay,* 2020 WL 7706602, at

14

*3 (W.D. N.Y., decided **December 29, 2020**) ("Although the agency protocol affords defendants an opportunity to present mitigating evidence to the Committee for its consideration, the internal policies and procedures of the Justice Department manual "[do] not create substantive or procedural rights" for defendants. . . *The Capital Review process is not a mini-trial* and the Court is aware of no law or regulation that obligates the Government to provide additional discovery in advance of a Committee meeting." (alteration in original) (citation omitted)(emphasis added)); *United States v. Shakir*, 113 F. Supp. 2d  1182, 1187 (M.D. Tenn. 2000) (denying defendants' motion for pre-authorization discovery, and stating, "[T]he Court finds that the Protocol does not create any enforceable substantive or procedural rights in the defendants, and that the DOJ's interpretation of its internal policy, prohibiting the disclosure of pre-authorization discovery, is a matter of prosecutorial discretion which is presumptively unreviewable by this Court." (collecting cases from the First and Sixth Circuits and district court decisions)); *United States v Sloan*, 969 F. Supp. 2d 830, 834 (E.D. Ky. 2013) ("The Protocol therefore provides no procedural rights, but rather is a "mere aid [ ] to the exercise of the

15

[Justice Department's] independent discretion."); *United States v. Pray,* 764 F. Supp. 2d 184, 188 (D.D.C. 2011) (denying motion for pre-authorization discovery for capital eligible charges and holding "[t]he Protocol does not create substantive or procedural rights for a defendant"); *United States v. Feliciano*, 998 F. Supp 166, 169 (D. Conn. 1998)("[T]he Protocol 'does not create substantive or procedural rights.' Rather, '[T]he protocol articulates internal administrative procedures to be followed by DOJ personnel . . .' It 'provides for "standards for determination" to guide the death penalty decision making process.'" (citations omitted)); *United States v. Hardrick*, 2011 WL 2516340 at *2 (E.D. La. 2011) (DOJ internal procedure related to Capital Case Review Committee "does not provide the defendant with any constitutionally protected substantive or procedural rights."); *United States v. Williams*, 181 F. Supp. 2d 267, 299 (S.D. N.Y. 2001) ("The vast majority of courts to consider the question have held that the Protocol does not create legally enforceable rights."); *United States v. Bodkins*, 2004 WL 2491615 *3 (W.D. Va. 2004) (denying the defendants' motion for pre-authorization discovery because the Justice Manual describes only the internal administrative process concerning whether to seek capital

punishment in this case and creates no discovery rights for a defendant or his attorneys).

As the *Tsarnaev* court explained:

> The opportunity extended by the protocol to the defendant to submit information and materials for consideration in the Department's internal deliberations does not create a legal right that can be overseen and enforced by the Court. *See United States v. Lopez-Matias,* 522 F.3d 150, 155-56 (1st Cir. 2008). Extending such an opportunity may easily be described as prudent policy, but it is not required by any constitutional, statutory, or decisional rule of law. *It is essentially a matter f grace.*

*Tsarnaev*, 2013 WL 5701582, at *1 (D. Mass. October 18, 2013) (emphasis added).

Thus, the overwhelming weight of authority indicates that defendant Lorenzo Scott's motion for additional specific discovery should be denied.

To be certain, the case law addressing a defendant's right to pre-authorization discovery has not always been consistent. There have been a handful of cases where district courts have allowed discovery even before the government makes a final decision regarding the death penalty. The defendant cites four such cases in his brief. None are in the Third Circuit. Most are "outliers," unique in their facts, governed

by local rules or "standing orders" regarding discovery, or involved

factors inapplicable in the present case. Moreover, the scope of the pre-

authorization discovery authorized in those cases was *narrow*—

certainly not the vast, voluminous and expansive additional discovery

tantamount to that requested by Lorenzo Scott in the present matter.

For instance, the defendant cites *United States v. Karake*, 282 F.

Supp. 2d 302, 306 (D.D.C. 2003). As the court explained in *United*

*States v. Pray*, 764 F. Supp. 2d 184, 190 (D.D.C. 2011):

> *Karake* was *sui generis*, involving defendants who were
> Rwandan Hutus charged with murdering American tourists
> in Uganda. The case was filed with unique obstacles that
> confronted defense counsel who represented non-English-
> speaking foreigners charged with committing capital offense
> sover six years previously in Uganda. *Karake*, 281 F. Supp.
> 2d at 305. The government did not, in fact, contest the
> application of *Brady* in that context, even as it read its
> requirements more narrowly than the Court. *Id.* at 305-06.
> *Karake does not assist here,* where the government fully
> contests the motion to compel.

*Pray*, 764, F. Supp. 2d at 190 (emphasis added).

Similarly, the defendant cites *United States v. Jackson*, 2003 WL

22023972 at *3 (S.D. N.Y. 2003). In *Jackson*, however, the scope of the

pre-authorization discovery allowed by the court was very *limited*. The

court allowed the defense to listen to two 911 calls which may have

contained exculpatory information.  In one of the 911 calls, persons running from the scene of a shooting were described as 5'3" or 5'4" and the two defendants in the case were much taller. In the other 911 call, the caller identified Jackson as the shooter, which was completely contrary to the government's theory of the case.  The court further reasoned that, by listening to the calls, the defendants might be able to identify eyewitnesses to the shooting who could confirm the exculpatory information. *Id.*, at \*2.

The defendant also cites *United States v. Diaz*, 2005 WL 1575191, at \* 10-11 (N.D. Cal. 2005).  However, *Diaz* carries very little weight, since it relied on a local rule of discovery in that particular district. *Diaz* cited *United States v. Perez*, 222 F. Supp. 2d 164 (D. Conn. 2002), and other cases which relied on local "standing orders" regarding discovery.   The court in *Pray*, for instance, found such cases unpersuasive.  *Pray*, 764 F. Supp. 2d at 188-189.  The Middle District of Pennsylvania has no such standing order or local rule.

Finally, the defendant cites *United States v. Delatorre*, 438 F. Supp. 2d 892 (N.D. Ill. 2006).  Unlike the present case, *Delatorre* involved a complex RICO case against a total of sixteen (16) defendants.

19

The *Delatorre* decision was also discussed in *Pray.*  The *Pray* court noted that although the *Delatorre* court granted some pre-authorization discovery, it also carved out certain exceptions to disclosure, such as material related to witnesses at risk, the identification of prosecution witnesses or privileged materials.  *Id.* at 188 *citing Delatorre* at 902.  As indicated above, *Pray,* and the vast majority of other courts for that matter, have rejected the assertion that *Brady* requires pre-authorization discovery. *Id.* at 188-89.  *Delatorre* did not find that the Justice Manual created substantive rights, but instead granted discovery based on the broad discretion a district court has to decide discovery issues.  *Delatorre* at 900.  However, the broad discretion to grant discovery does not mean unlimited discretion.  As the Supreme Court stated, "A criminal defendant is entitled to rather limited discovery." *Degan v. United States,* 417 U.S. 820, 825 (1996).  The *Delatorre* court did not discuss what specific entitlement provided the authority for the granting of the discovery motion.  Accordingly, the case is of little persuasive value. It is contrary to the overwhelming weight of authority and the United States respectfully submits that it should not be followed by this court.

Unlike the defendants in *Delatorre,* the charges against Lorenzo Scott relate to a single criminal episode.  Since the time of his indictment, discovery has been provided to the defendant concerning that criminal episode.  The Justice Manual, at § 9-10.080, contemplates that counsel for the defendant shall have "*a reasonable opportunity* to present information for the consideration of the United States Attorney or Assistant Attorney General . . ." and the defendant will be afforded that *reasonable* opportunity.  *However*, the rules for discovery remain the same in capital cases.  *See e.g, United States v. Jelani Solomon,* 2007 WL 587805 *2 (W.D. Pa. February 20 2007) (denying overbroad discovery request in a capital prosecution: "In this request, it appears . . . that Defendant seeks pretrial disclosure of information that goes well beyond the types of discovery permitted in federal criminal cases . . . the request is denied); *United States v. Lujan,* 530 F. Supp. 2d 1224, 1231, 1234 (D. N.M. 2008) (capital prosecution) ("The Constitution . . .  does not grant criminal defendants the right to embark on a broad or blind fishing expedition among documents possessed by the Government.") (internal quotations and citations omitted).

Accordingly, the defendant's pre-authorization request for additional specific discovery should be denied.

### III.   <u>The Specific Discovery Sought by the Defendant is Beyond the Scope of Pre-authorization Discovery, and Rule 16 Does Not Help the Defendant's Cause.</u>

As set forth above, even in the handful of cases in which courts have ordered pre-authorization discovery, the scope of that discovery has been limited.

However, regarding the ongoing civil litigation in the *Richardson* and *McCreary* cases, the defendant requests the following:

> a. All information the government produced to the plaintiffs in the *Richardson* and *McCreary* lawsuits, including but not limited to statements, studies, statistical compilations, policies, memoranda, writings of every kind, in response to a request for production of documents under the Federal Rules of Civil Procedure.
>
> b. All answers made by the government to any interrogatory propounded by any of the plaintiffs in the *Richardson* and *McCreary* lawsuits.
>
> c. All transcripts of any deposition taken by the government or the plaintiffs in the *Richardson* and *McCreary* lawsuits.
>
> d. All documents and material obtained by the government from any of the plaintiffs in the *Richardson* and

*McCreary* lawsuits whether obtained voluntarily or informally or following the government's, subpoena, request for production of documents or service of interrogatories upon any plaintiff in the *Richardson* and *McCreary* lawsuits.

e. to the extent the information contained in ¶ 32 (a)-(h) of this motion were not produced to the plaintiffs in Richardson and McCreary litigation, that the information be obtained by the government from BOP and delivered forth with to the defense.

Thus, quite literally, the defense has requested tens of thousands of pages of documents and information from the government. Undersigned counsel has been informed that in the *Richardson* case there have been depositions and written discovery responses, with thousands of pages of discovery produced by the government and hundreds of pages of documents produced by the plaintiffs.  Moreover, there is a *protective order* in place, limiting disclosure of the discovery to counsel of record for use in that specific case.  Much of the inmate-specific information is very personal and private in nature.[7] The documentation is in various forms, from "paper" files to "electronic" files

---

[7] U.S. Attorney's Offices across the country have been sued countless times by inmates who claim that their records or other information have been released without their consent.

and everything in between – and is spread among several different civil attorneys in several different offices.[8]

Similarly, in the ongoing *McCreary* civil litigation, tens of thousands of pages of discovery have been produced, as well as responses to interrogatories and discovery responses from the plaintiffs. Again, the documentation is in various forms, from paper copies to electronic files, and spread among several different civil attorneys in several different offices. Again, a *protective order* is in place. Moreover, counsel has been informed that no depositions have taken place in that matter.

Further, regarding USP Lewisburg itself, Lorenzo Scott seeks the following information:

> **a.** All documents and communications referring or relating to incidents of inmate-on-inmate assaults between cellmates in the Special Management Unit at USP Lewisburg from March 2010 to present, including but not limited to, any logs and/or reports identifying a list of all inmates involved in inmate-on-inmate assaults, the extent of any injuries sustained and any medical services provided. (**It should be noted that the request is for eleven years' worth of documents and "communications"!**)

---

[8] Defense counsel suggests that production of this vast array of documentation "would be at most a 'key stroke away.'" Doc. 51 at p. 22. Perhaps defense counsel can inform government counsel as to the whereabouts of this magic "key," because government counsel is unaware of its location.

**b.**     Copies of Form 583, Report of Incident, prepared by USP Lewisburg for the years 2005-15 for all inmate deaths at USP Lewisburg. **(The request is for information over a 10-year period.)**

**c.**     Copies of the Board of Inquiry Report or Regional Inquiry Team (After Action Report) or Local Inquiry Team Report or any after action report and summary report conducted at USP Lewisburg due to this incident. Also, the local response should include the corrective action plan to the recommendations; all documents, records, video recordings, or working papers or personal records reviewed and created by members of the Boards or Teams, to include electronic material. **(Government counsel has been informed that such reports are unusual and rarely done.)**

**d.**     Copies of all Board of Inquiry Reports, Regional Inquiry Team Reports, Local Inquiry Team Reports and local responses and corrective action plans or recommendations for *all incidents at USP Lewisburg*. Also, all documents, records, working papers or personal records created by members of the Boards or Teams, to include electronic material. (emphasis added). **(The term "incident" is not defined or explained.)**

**e.**     The information required by the Inmate Discipline Program Statement 5270.09, regarding the Data Collection Requirements Codes 100 and 101 to include the following:

    i. Type of weapon
    ii. Type of victim
    iii. Nature of injury
    iv. Referral for prosecution **(There is no time period set forth in the request.)**

**f.**     The average daily population of the USP Lewisburg for the years 2005-2015. **(The request is for *daily* information over a 10-year period.)**

g. Copies of all Institution Character Profiles reports conducted regarding USP Lewisburg from 2005 to 2015. **(Again, the request is for information over a 10-year period**.)

h. Copies of all Prison Social Climate Surveys reports regarding USP Lewisburg, from 2005 to 2015. **(Again, the request is for information over a 10-year period.)**

Again, the defendant is requesting a decade's-worth, or in some instances, more-than-a-decade's-worth of information and documentation regarding USP Lewisburg.[9]  Even the few courts which have ordered pre-authorization discovery have not ordered such vast, extensive, and wide-ranging discovery as that requested by Lorenzo Scott in the present matter.  *See e.g. Jackson, supra.* (in which the defendants were allowed to listen to two 911 calls).

Further, a great deal of information concerning USP Lewisburg and the *Richardson* and *McCreary* lawsuits is already available from the public filings on the docket for both cases and from information already in the public realm. The defendant is already aware of a great deal of this information and, in fact, cites some of the allegations of

---

[9] Government counsel has been informed that none of this so-called "institution-wide" information, such as statistics concerning inmate-on-inmate assaults, was produced in the *Richardson* or *McCreary* litigation.

problems at USP Lewisburg in his motion.  *See* Doc. 51, p. 8-12, entitled

"USP Lewisburg's Long and Notorious History."  In addition, there have

been a number of publicly released studies concerning USP Lewisburg

and the Special Management Unit, some of which are referenced in the

defendant's motion, including a study by the District of Columbia

Corrections Information Council[10] (*See* Doc. 51, p. 9) and a report by the

Office of Inspector General.[11] Further, the defendant's motion also

references incident reports obtained by the Marshal Project and NPR.

*Id.*

Thus, should defense counsel care to convey particulars

concerning USP Lewisburg during their "*reasonable opportunity* to

present information" to the Capital Review Committee, there are

already plenty of sources from which to obtain such information.

Lastly, the defendant's brief references discovery under Federal

Rule of Criminal Procedure 16(a)(1)(E), which reads as follows:

---

[10] See DCCIC Report on USP Lewisburg SMU at
https://cic.dc.gov/sites/default/files/dc/sites/cic/publication/attachments/USP%20Lewisburg%20SMU%20Report%20FINAL%204.6.18_0.pdf

[11] See OIG Report which references the USP Lewisburg SMU at
https://oig.justice.gov/reports/2017/e1705.pdf

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings, or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > (i)  the item is *material* to preparing the defense;
> > (ii) the government intends to use the item in its case-in-chief at trial; or
> > (iii)  the item was obtained from or belongs to the defendant.

Fed. R. Crim P. 16(a)(1)(E) (emphasis added).

Lorenzo Scott claims that Rule 16(a)(1)(E) entitles him to "mitigation" information to be presented to the Capital Review Committee.  The rule does require production of certain items if they are "material to preparing the defense."  At the outset, however, the Supreme Court, in *United States v. Armstrong,* 517 U.S. 456 (1996), held that Rule 16 (a)(1)(C) (the predecessor to Rule 16(a)(1)(E)) could not be used to obtain evidence for a "selective prosecution" claim.  The Court reasoned that, in the context of Rule 16, the meaning of *"defense"* is limited "to an argument in response to the Government's *case in chief.*" 517 U.S. at 462 (emphasis added).  It follows that Rule 16(a)(1)(E) can not be used to obtain *"mitigation"* evidence for use at *sentencing. See United States v. Brinson*, 208 F. App'x 420, 424 (6th

Cir. 2006) (holding that *Armstrong* precludes use of Rule 16(a)(1)(E) to obtain information for use at *sentencing* hearing); *United States v. Robinson*, 503 F.3d 522, 532 (6th Cir. 2007) (holding that the defendant's request for discovery fell outside the language of Rule 16(a)(1)(E) because he was not seeking the discovery to aid in the preparation of his defense, but rather was attempting to obtain information for the purpose of gathering materials to support various *sentencing* arguments; thus, the discovery sought was not *material* to his defense).

The district court in *Tsarnaev*, however, did conclude that Rule 16(a)(1)(E)(i) includes information material to defense preparation for the penalty phase.  The court ultimately determined that the defendant's "general assertions" failed to make a "prima facie" showing of materiality for the requested discovery, and the court did not specifically reach the issue of whether Rule 16 applied to information that would help prepare the defense mitigation case to the Department of Justice, as opposed to trial.  2013 WL 6196279, at *4-5.  In *United States v. George*, 2019 WL 4982324 (E.D. La. Oct 8, 2019), the district court noted that it was not aware of any other case that followed *Tsarnaev's* conclusion the Rule 16(a)(1)(E) applied to the penalty phase

of a capital case. *Id* at *5 n. 45. Nevertheless, as the *George* court observed, *Tsarnaev* held that "the defendant bears the burden of making a 'prima facie showing of materiality.'" *Id.* (quoting *United States v. Bulgur*, 928 F. Supp. 2d 305, 324 (D. Mass. 2013). As in *Tsarnaev*, the *George* court found that the defendants failed to make this requisite showing and denied their request for the information sought.

In order to make a prima facie showing of materiality, the defendant "must offer more than the conclusory allegation that the requested evidence is material." *United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D. N.Y. 2013). Moreover, materiality under Rule 16 is not the same as "useful." *United States v. Rigas*, 258 F. Supp. 2d 299, 307 (S.D. N.Y. 2003).

In *Tsarnaev*, the defendant made similarly broad discovery requests and sought a motion to compel from the court. In denying Tsarnaev's discovery requests, the court focused upon the issue of materiality:

> The defendant has not made a prima facie showing of
> materiality under Rule 16(a)(1)(E)(i) as to any of his
> discovery requests. Instead, he relies on general assertions.
> As an example, he contends that material found in the

immigration A-files of family members will help in presenting his full life history.  Again, he *conflates relevance and materiality.*  Rule 16 does not require the pretrial disclosure of all evidence relevant to the defense, but only such relevant evidence as is material.

2013 WL 6196279, at *4 (emphasis added).

Similarly, Lorenzo Scott makes only general assertions regarding information from the ongoing civil litigation in the *Richardson* and *McCreary* cases, as well as the decade's-worth of information he seeks regarding USP Lewisburg.

As the *Tsarnaev* court concluded:

The defendant has not made a prima facie showing of materiality under any of these formulations.  He essentially seeks access to the government's *information haystack* because he is confident there are useful evidentiary needles to be found there.  That is simply not enough to trigger a disclosure obligation under Rule 16(a)(1)(E)(i).

*Tsarnaev*, 2013 WL 6196279 at *5 (emphasis added).

Lorenzo Scott seeks access to a similar "information haystack" – and his motion should similarly be denied.

WHEREFORE, for the reasons set forth herein, the government respectfully submits that the defendant's Motion for Specific Discovery and *Brady* material should be dismissed.

Respectfully submitted,

Date: April 1, 2021

/s/Robert J. O'Hara
ROBERT J. O'HARA
Assistant United States Attorney
ID No. 47264
P.O. Box 309
Scranton, PA 18501-0309
(570) 348-2800 (telephone)
(570) 348-2830 (facsimile)
robert.o'hara@usdoj.gov

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| -vs- | : | No. 4: 20-CR-065 |
| | : | |
| **LORENZO SCOTT,** | : | (JUDGE BRANN) |
| Defendant | : | |
| | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on April 1, 2021 she served a copy of the attached:

## GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SPECIFIC DISCOVERY AND *BRADY* MATERIAL

by ECF to the following:

James A. Swetz, Esquire
Thomas A. Thornton Esquire

Counsel for the defendant

Luann Manning
Supervisory Legal Assistant